## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SAMANTHA KEMMERLIN, individually and on behalf of similarly situated persons, et al.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 24-CV-0230-CVE-CDL** |
| ) | |
| **BICENTENNIAL INC. d/b/a LADY GODIVA'S,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>ORDER AND OPINION</u>

Before the Court are: plaintiff Samantha Kemmerlin's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. # 22), including two supporting declarations (Dkt. ## 22-5, 22-6); plaintiff's brief in support of her motion (Dkt. # 23); Bicentennial Inc. d/b/a Lady Godiva's (defendant) response (Dkt. # 33), including one declaration (Dkt. # 34); and plaintiff's reply (Dkt. # 38). Plaintiff, individually and on behalf of all others similarly situated, brings this putative collective action against defendant under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, <u>et</u> <u>seq.</u>, for unpaid minimum wage and overtime compensation and liquidated damages. Dkt. # 1, at 1, 7.[1] For the reasons set forth below, plaintiff's motion to conditionally certify the collective action is granted in part. The Court finds that plaintiff has met her burden at this preliminary notice stage and, therefore, conditionally certifies the proposed collective of persons. The Court further orders that plaintiff revise the proposed notice as described below, and approves plaintiff's proposed methods of contacting the putative plaintiffs.

---

[1]     One opt-in plaintiff, Felicity Conrad, has filed a notice of consent to join the putative collective action, Dkt. # 7, but Kemmerlin is the named plaintiff herein.

**I.**

Defendant is an adult entertainment club in Tulsa, Oklahoma that does business as Lady Godiva's.  Dkt. # 1, at 3; Dkt. # 22-5, at 1.  Plaintiff and opt-in plaintiff Felicity Conrad estimate that 300 or 200 dancers, respectively, have worked at defendant's club within the three years preceding this action.  Dkt. # 22-5, at 3; Dkt. # 22-6, at 3.  Plaintiff and Conrad are two such dancers.  Dkt. # 22-5, at 1; Dkt. # 22-6, at 1.  Plaintiff avers that defendant employed her from January 2019 through November 2023.  Dkt. # 22-5, at 1.  Conrad avers that defendant employed her from March 2020 through August 2023.  Dkt. # 22-6, at 1.  As dancers, plaintiff and Conrad performed stage and lap dances at defendant's club.  Dkt. # 22-5, at 1; Dkt. # 22-6, at 1.

Plaintiff and Conrad aver that they are personally familiar with other dancers' work conditions because they worked alongside and communicated with other dancers.  Dkt. # 22-5, at 1; Dkt. # 22-6, at 1.  Plaintiff and Conrad attest that defendant classified them and other dancers as independent contractors, and that other dancers had the same or similar duties as they had.  Dkt. # 22-5, at 1-2; Dkt. # 22-6, at 1-2.  Yet, plaintiff and Conrad aver that they and other dancers were directly hired by defendant and subjected to defendant's control of their work schedules, duties, protocols, applications, assignments, and employment conditions, including requiring them to sign in and out on a piece of paper for each shift.  Dkt. # 22-5, at 1-2, 3; Dkt. # 22-6, at 1-2, 3.  For example, plaintiff and Conrad attest that defendant: determined their pay scale without their input; hired them to work for defendant for a continuous and ongoing period of time; had complete control over the venue; required them to follow the club's policies and rules; possessed the authority to discipline them and other dancers for running late, arguing, or wearing certain outfits; regularly

2

exercised this authority; and made advertising decisions without the input of dancers.  Dkt. # 22-5, at 2-3; Dkt. # 22-6, at 2-3.

Plaintiff and Conrad attest that "[d]efendant did not pay [them] or the other [d]ancers any wage at all[,]" and plaintiff alleges that she and other dancers worked over 40 hours in some weeks of their employment with defendant.  Dkt. # 1, at 6; Dkt. # 22-5, at 2; Dkt. # 22-6, at 2.  Plaintiff and Conrad aver that the entirety of the dancers' pay was comprised of the tips remaining after the dancers: paid defendant $30 or more prior to performing any dances; paid defendant fines for various offenses;[2] and shared their tips with defendant, security personnel, a disc jockey, cocktail waitresses, and other employees.[3]  Dkt. # 22-5, at 3; Dkt. # 22-6, at 3.  Plaintiff and Conrad estimate that they paid defendant at least $100 in tips per night.  Dkt. # 22-5, at 3; Dkt. # 22-6, at 3.  Further, plaintiff and Conrad attest that they discussed this payment structure with other dancers on many occasions, and other dancers expressed their dissatisfaction with the manner in which defendant's policies resulted in their improper compensation.  Dkt. # 22-5, at 3; Dkt. # 22-6, at 3.  Plaintiff and Conrad aver that other dancers would want to join in the lawsuit if they were aware of it, and Conrad provides the stage names of fifteen dancers whom she believes would be interested in joining the collective.  Dkt. # 22-5, at 3; Dkt. # 22-6, at 3.  Thus, plaintiff alleges that defendant had a uniform policy and practice of improperly paying its dancers in violation of the FLSA.  Dkt. # 23, at 1.

---

[2]    For example, plaintiff and Conrad aver that defendant fined dancers $75 or $50, respectively, for arriving late or failing to show up, and plaintiff avers that defendant fined dancers $75 to $100 for complaining about security issues.  Dkt. # 22-5, at 3; Dkt. # 22-6, at 3.

[3]    Plaintiff's complaint and supporting declarations do not explain how the dancers' tips were divided among defendant and these individuals.

3

Defendant's manager, Joseph Scott, attests that dancers[4] at Lady Godiva's have the option to be engaged as independent contractors or W-2 employees on payroll, and plaintiff voluntarily elected to be an independent contractor. Dkt. # 34, at 1, 3. Scott avers that, while Lady Godiva's recommends that dancers book their performance days and times in advance to ensure the availability of performance space, dancers may work whatever days and shifts they chose. Id. at 1-2. Further, Scott attests that dancers who elect independent contractor status may work at other clubs, have artistic freedom over their dances, provide their own costumes, and solicit and refuse customers of their choosing. Id. at 2. As to independent contractor compensation, Scott avers that:

> There are no set rates on dances in which the [dancer] must perform. Our only rate is what Lady Godiva's charge per time, per room. This is charged and dictated to the customer for elevated level experience seating.[5] For the assistance of the sale[,] the [dancer] receives a commission that is reported as a 1099. The [dancer] can charge anything for her entertainment service. Lady Godiva's does not track dances nor receives any portion of her stage tips or lap dance money.

Id. Scott avers that dancers are not required to "tip out" a required percentage of their tips to other employees, dancers may charge "anything" for their services, and "Lady Godiva's does not track dances nor receives any portion of [a dancer's] stage tips or lap dance money." Id.

---

[4]    Defendant refers to its dancers as entertainers. Dkt. # 33, at 8. For the sake of clarity, the Court uses plaintiff's terminology and refers to the entertainers as dancers.

[5]    Scott provides the following explanation of the elevated level experience seating that affects the dancers' commission:

> The customer's elevated level experience is tracked by designer glassware that accompanies the customer and [dancer] to VIP seating. This only has water in it. Its purpose per size and color tells the room what level of experience the customer has access to.

Id.

Defendant attached to Scott's declaration two agreements that Scott avers plaintiff executed: the business status selection by entertainer agreement and entertainment license agreement. Dkt. # 34-1; Dkt. # 34, at 3. The selection agreement explains the difference between independent contractor and employee status for dancers at Lady Godiva's. Dkt. # 34-1. If a dancer elects independent contractor status, the selection agreement explains that:

> [A]ll of you[r] earnings will come directly from your customers. YOU WILL <u>NOT RECEIVE ANY PAY FROM THE CLUB, EITHER BY WAY OF AN HOURLY WAGE OR A SALARY</u>. You will charge your customers for your dance performances; the money that you receive from them, either by way of dance fees . . . or tips . . . will be your money that you will be able to take home at the end of the day. You will, however, pay certain fees to the Club for having the right to perform here, as well as specified administrative charges. . . . You will not be required to share your tips with, or "tip out," anyone.

<u>Id.</u> at 2 (emphasis in the original). The entertainment license agreement states that:

> In consultation with [dancers] who are under contract with the Club, the Club shall establish fixed fees as the price for certain personal performances. . . . <u>THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT **ENTERTAINMENT FEES** ARE NEITHER TIPS NOT GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR PURCHASING A PERSONAL ENTERTAINMENT PERFORMANCE</u>. . . . For all dance dollars redeemed by [the dancer], the **Club** shall remit to [the dancer] 80% of the face value of the dance dollars.

<u>Id.</u> at 6 (emphasis in the original). The selection agreement further states that, as an independent contractor, "you will be responsible for taking care of and paying all taxes and other withholding due on your income." <u>Id.</u> at 3.

Conversely, if a dancer elects employee status, the selection agreement explains that:

> [Y]our employment will be "at will[,] . . . [Y]ou will be paid . . . the current applicable minimum wage. . . . [Y]ou would be entitled to retain all tips that you collect (gratuities paid by a customer **<u>over and above</u>** the posted dance fees as well as stage tips, but **<u>not</u>** the mandatory dance fees you charge for personal performances . . . ) although you will be required to pay 25% of your tips into a "tip pool" that

5

would be distributed to non-dancer tipped employees. . . . As an [e]mployee, the dance fees you charge customers <u>belong to the Club</u>.

<u>Id.</u> at 2 (emphasis in the original).  Further, the selection agreement explains that, as an employee, "you must, by law, report ALL of your tip income to the Club. . . . [T]he Club is required by law to pay to the IRS, out of the wages due to you, taxes owed on your tip income."  <u>Id.</u> (emphasis in the original)

On May 14, 2024, plaintiff filed a complaint alleging individual and collective action claims against defendant for violation of the FLSA minimum wage and overtime provisions.  Dkt.  # 1, at 1, 8, 10.[6]  Defendant filed an answer (Dkt. # 17), and plaintiff filed this motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. # 22) including two supporting declarations (Dkt. ## 22-5, 22-6) and a brief in support (Dkt. # 23). Defendant filed a response in opposition of the motion (Dkt. # 33) and a declaration (Dkt. # 34) by defendant's manager.  Plaintiff filed a reply (Dkt. # 38).  The Court is without further discovery filed of record.

## II.

The FLSA permits employees to bring an action against any employer for unpaid overtime compensation, "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To join such a collective action, opt-in plaintiffs are required to consent in writing and file the consent in the court in which the action is brought. <u>Id.</u>

The Tenth Circuit has applied an ad hoc approach "in determining whether plaintiffs [are] 'similarly situated' for purposes of § 216(b)."  <u>Thiessen v. Gen. Elec. Cap. Corp.</u>, 267 F.3d 1095,

---

[6]    On May 15, 2024, Conrad filed a notice of consent to join the action.  Dkt. # 7.

1105 (10th Cir. 2001). This two-step approach assesses putative collective members first at the notice stage, and then later after discovery. Id. at 1102-03. At the first stage, courts determine whether certification is proper for sending notice to putative members. Id. at 1102. This determination is subject to a lenient standard requiring "nothing more than substantial allegations that the putative [collective] members were together the victims of a single decision, policy[,] or plan." Id. (quoting Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997)). "In reviewing a motion for conditional certification, the court does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims." French v. Midwest Health, Inc., No. 2:14-CV-2625-JAR-KMH, 2015 WL 4066748, at *1 (D. Kan. July 2, 2015).[7] Instead, courts rely on the allegations in plaintiff's complaint and supporting affidavits. Swales v. KLLM Transport Servs., L.L.C., 985 F.3d 430, 436 (5th Cir. 2021) (explaining that courts that adopt the two-step conditional certification approach rely on the parties' pleadings and affidavits); Stallings v. Antero Res. Corp., No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610, at *6 (D. Colo. Mar. 12, 2018) (explaining that a court can rely on "a plaintiff's pleadings and declaration or affidavit" when determining whether the putative collective were victims of a single policy, plan, or decision), R. & R. adopted by 2018 WL 2561046 (D. Colo. Apr. 16, 2018).

The second stage takes place after the collective action has been conditionally certified and discovery has been completed. Defendant may move to decertify the collective. Thiessen, 267 F.3d at 1102-03. At the second stage, the district court follows stricter factors to determine whether opt-in plaintiffs are similarly situated. Id. Because the instant case is currently at the initial notice stage,

---

[7]    The Court cites this and other unpublished decisions for their persuasive value. 10th Cir. R. 32.1(A)

the Court applies the lenient standard to determine whether plaintiff has properly made substantial allegations that the members of the putative collective are "similarly situated" such that conditional certification under § 216(b) is appropriate.

## III.

Plaintiff asks the Court to conditionally certify the following collective: "All Dancers who worked for Defendant Bicentennial Inc. d/b/a Lady Godiva[']s since May 14, 2021." Dkt. # 22, at 1 (emphasis in the original omitted). Plaintiff requests that the Court approve the proposed notice forms and implement a procedure whereby notice of the action is sent via United States mail, text, and email, followed by a reminder text, email, and postcard sent 30 days after the mailing of the notice. Id. at 2-3. Plaintiff also asks that the Court direct defendant to produce the names, last known home addresses, phone numbers, and personal and work email addresses of potential opt-in plaintiffs in an electronically manipulable format no later than 10 days after the Court grants its motion. Id. at 3. Finally, plaintiff requests that the Court grant a 90-day period to distribute the notice commencing 14 days after defendant produces the requested information. Id. Defendant responds that conditional certification is improper and that the proposed notice and notice process are unduly burdensome and improper. Dkt. # 33, at 1-2.

### A. Plaintiff and the putative collective are similarly situated

Plaintiff argues that she and the purported collective members were all subject to the same pay practices and procedures in violation of the FLSA and, thus, are similarly situated. Dkt. # 23, at 9. Defendant responds that plaintiff failed to make purportedly required preliminary factual showings, and that she cannot and has not demonstrated that she and the putative collective are similarly situated. Dkt. # 33, at 1-2, 13, 15.

As to the purportedly required preliminary factual showings, defendant argues that the Court should not reach the issue of conditional certification because plaintiff failed to demonstrate that individual or enterprise coverage under the FLSA exists, and that similarly situated plaintiffs who wish to join the collective actually exist. Id. at 1-2, 8-15. Plaintiff replies that the Court should disregard defendant's merits-based arguments at this stage. Dkt. # 38, at 2. On a motion for conditional certification, the overriding question is whether a plaintiff is similarly situated to the putative collective, and district courts should not reach the merits of the case. Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095, 1102, 1107 (10th Cir. 2001); Kirkpatrick v. Greenix Holdings, LLC, No. 2:23-CV-00033-JNP-JCB, 2024 WL 757158, at *4 (D. Utah Feb. 23, 2024) ("Thiessen held that it is reversible error to resolve a merits issue when determining [collective] certification issues."); French v. Midwest Health, Inc., No. 2:14-CV-2625-JAR-KMH, 2015 WL 4066748, at *4 (D. Kan. July 2, 2015) ("Plaintiff's burden at this stage is not to prove that the policy violates the FLSA. It is to show that such a policy exists and that the [collective] was subject to it."). "The purpose of conditional certification is to notify putative collective action members of their right to join the lawsuit. Though [d]efendant may have an affirmative defense to litigating opt-in plaintiffs' FLSA claims, such a defense does not negate the right of potential collective action members to join the litigation." Brayman v. KeyPoint Gov't Sols., Inc., No. 18-CV-0550-WJM-NRN, 2018 WL 5776373, at *8 (D. Colo. Nov. 1, 2018) (internal citation omitted), reconsidered on other grounds in 2019 WL 3714773, at *5-6 (D. Colo. Aug. 7, 2019) (considering defendant's affirmative defense that certain opt-in plaintiffs were subject to an arbitration agreement because a motion to compel arbitration was filed after the motion for conditional certification). Therefore, the Court will not consider defendant's merits-based arguments as to whether plaintiff sufficiently pleaded coverage

under the FLSA[8] or demonstrated that similarly situated opt-in plaintiffs who wish to join the collective exist at this stage.[9]

As to whether the putative collective members are similarly situated, defendant argues that plaintiff cannot show that all dancers are similarly situated because the dancers in the proposed collective may have elected to be W-2 employees or independent contractors, and plaintiff failed to support her motion with sufficient facts. Dkt. # 33, at 15-17. Plaintiff replies that she has met her lenient burden to show that she is similarly situated to others who were subject to defendant's pay practices and policies. Dkt. # 38, at 1, 3. "The Tenth Circuit specifically stated that [a] court reviews the disparate factual and employment settings of the individual plaintiffs and the various defenses available to defendant which appear to be individual to each plaintiff in the court's second-stage analysis on a motion to decertify at the conclusion of discovery." Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty., Kansas, No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005). At this stage, plaintiff need only make substantial allegations or, in other words, "provide some evidence to establish a colorable basis showing [that] the putative [collective] members are victims of a single decision, policy[,] or plan." Thiessen, 267 F. 3d at 1102; Calvillo v. Bull Rogers, Inc., 267 F. Supp. 3d 1307, 1312 (D.N.M. 2017).

---

[8]     This opinion and order granting conditional certification does not reach the issue of the FLSA's application.

[9]     Unlike the Eleventh Circuit, the Tenth Circuit "has never adopted the requirement that plaintiffs demonstrate the existence of other employees who wish to opt into the litigation" prior to a court considering conditional certification. Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991); Felps v. Mewbourne Oil Co, Inc., 460 F. Supp. 3d 1232, 1236 (D.N.M. 2020) (quoting Gonzalez v. Family Dollar Stores, Inc., No. 03-535 JH/LFG, 2005 WL 8163793, at *3 n.3 (D.N.M. June 21, 2005)).

The Court finds that plaintiff has made substantial allegations that she and other dancers were subject to defendant's allegedly violative pay structure. Plaintiff asks the Court to conditionally certify this collective on behalf of all dancers who worked for defendant since May 14, 2021. Dkt. # 22, at 1. Plaintiff alleges that the putative collective of all dancers possessed the same or substantially similar job duties and requirements, and that defendant paid the collective members solely in tips, did not pay them a minimum wage or overtime pay, and classified them as independent contractors. Dkt. # 1, at 7-8. While defendant may ultimately prove that certain dancers are not similarly situated to the collective because the dancers' employment classifications differ,[10] the Court will not resolve the parties' factual dispute at this stage.

Rather, the Court must rely on plaintiff's pleadings and declarations. See Stallings v. Antero Res. Corp., No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610, *6 (D. Colo. Mar. 12, 2018), R. & R. adopted by 2018 WL 2561046 (D. Colo. Apr. 16, 2018). Plaintiff and opt-in plaintiff Conrad aver: that defendant classified dancers as independent contractors, yet exercised control over their work; that defendant did not pay dancers any wage at all; and that the tips dancers received, after making certain required payments to defendant and its employees, constituted the entirety of their pay. Dkt. # 22-5, at 3; Dkt. # 22-6, at 3. Plaintiff and Conrad aver that defendant recorded the number of hours dancers worked, and plaintiff alleges that she and other dancers worked over 40 hours in some weeks. Dkt. # 1, at 6; Dkt. # 22-6, at 3. Thus, plaintiff has made substantial allegations that defendant had a uniform policy and practice of improperly paying its dancers in violation of the FLSA by intentionally misclassifying dancers as independent contractors to avoid

---

[10]    Defendant does not state that any dancers within the proposed collective actually elected to be classified as employees. Id.

paying dancers a lawful minimum wage for all hours worked and overtime for hours worked over forty hours a week.  Dkt. # 1, at 6-7; Dkt. # 23, at 1.  See Stallings, 2018 WL 1250610, at *6 (concluding that, while "th[e] court would prefer additional facts in both the [c]omplaint and [p]laintiff's declaration[,]" the plaintiff made substantial allegations that he and putative collective members "were subject to a single decision, policy, or plan to pay them as independent contractors with a single day-rate for manual labor and for hours worked in excess of forty").  The Court will conditionally certify plaintiff's proposed collective.[11]

### B. Proposed notice to putative collective

Plaintiff requests that the Court approve the proposed notice forms, methods of distributing notice, and notice schedule, and order defendant to provide plaintiff with the contact information for potential opt-in plaintiffs.  Dkt. # 23, at 9.  Defendant makes three arguments as to why plaintiff's proposed notice and notice process are unduly burdensome and improper.  Dkt. # 33, at 17-20.  First, defendant asserts that the proposed notice is misleading because it misrepresents defendant's contentions.  Id. at 2, 18.  Second, defendant asserts that the proposed notice improperly implies that the Court agrees with the merits of the action.  Id. at 2, 19.  Third, defendant argues that the proposed notice process is unduly burdensome because plaintiff requests the use of multiple methods of notice despite the limited universe of potential collective action members.  Id. at 2, 19, 20.  Plaintiff replies that defendant's objections to the proposed notice and notice process are uniformly self-serving and meant to reduce case participation.  Dkt. # 38, at 5.

---

[11]    Again, by conditionally certifying this collective, the Court does not decide whether the FLSA applies in this case or whether defendant violated the FLSA.

The Court will first consider defendant's objections to the notice and then consider whether further revision to the notice is necessary to ensure that the notice is accurate and informative. As defendant does not object to plaintiff's proposed notice schedule and electronic consent forms, the Court approves the notice schedule and the use of electronic forms.

### 1. Defendant's contentions

Defendant argues that the proposed notice misrepresents its contentions. Dkt. # 33, at 2. First, defendant states that "it is not only that the [d]efendant contends that the [dancers] are properly classified as independent contractors, but that they <u>are</u> in fact independent contractors and, thus, <u>not</u> subject to the protections of the FLSA." <u>Id.</u> at 18 (emphasis in the original). While defendant does not identify the language in the proposed notice that it believes misrepresents its contentions, the Court infers that defendant refers to the statement: "Defendants [sic] assert that they complied with the law and properly compensated all of their employees." Dkt. # 22-1, at 2.

The Court agrees that this statement does not accurately reflect defendant's legal position because defendant does not concede that all dancers within the proposed collective were employees. Further, the Court finds that the notice fails to provide a clear and informative statement of the case, which should explain, under a single header: the purported collective's claim and legal theory, including the policy that allegedly violates the FLSA; the damages sought; and defendant's contentions.[12] Further, the statement of the case should inform recipients that the Court has not ruled

---

[12]    The proposed notice provides a vague explanation of the case through several disconnected sentences within the first two pages of the notice, which state: "A Dancer, Named Plaintiff Samantha Kemmerlin, has sued Bicentennial Inc. d/b/a Lady Godiva[']s ("Defendant") claiming that they [sic] failed to pay lawful wages to their dancers[;]" "In this lawsuit, the Named Plaintiff claims that Defendant failed to pay her and other similarly situated Dancers a lawful wage under federal law[;]" and "The Named Plaintiff is seeking to recover unpaid wages. The Named Plaintiff also seeks 'liquidated damages' in an amount equal to the

on the merits of the collective action and does not take a position as to the merits of this case by authorizing the distribution of this notice. Therefore, the Court orders the parties to meet and confer to draft an adequately detailed and brief statement of the case.[13]

This statement of the case should be presented under question and answer two and replace question and answer five, six, and seven. To improve the clarity of the notice, plaintiff should convert the bullet points on the first page of the notice to paragraph form and consider whether the inclusion of the agreed statement of the case renders this introductory information unnecessary. The Court also notes that the proposed notice inaccurately refers to "defendants," rather than a single defendant (Dkt. # 22-1, at 2), and plaintiff must revise the notice so that it correctly represents that a single entity is sued in this case.

Second, defendant argues that it does not recognize all of the dancers' "rights to pursue these claims in [c]ourt[] because [the dancers] who opted to be engaged as independent contractors do not have FLSA claims [] to pursue." Dkt. # 33, at 18. Defendant again fails to identify to which of the proposed notice's statements it objects. While defendant's disagreement with plaintiff's legal theory does not render the proposed notice misleading, the Court agrees that certain language in the

---

unpaid wages, as well as recovery of costs and attorneys' fees." Id. at 1, 2 (emphasis in the original is omitted).

13    When the parties dispute the form of the notice, courts have often required the parties to attempt to create a compromise notice, rather than simply ruling on the proposed notice. E.g. Heitzman v. Calvert's Express Auto Serv. & Tire, LLC, No. 22-CV-2001-JAR-ADM, 2022 WL 5241927, at *8 (D. Kan. Oct. 6, 2022); Swartz v. D-J Eng'g, Inc., No. 12-CV-1029-JAR, 2013 WL 5348585, at *7-8 (D. Kan. Sept. 24, 2013); Torres v. Cache Cache, Ltd., No. 12-CV-00150-LTB-KMT, 2012 WL 6652856, at *5 (D. Colo. Dec. 21, 2012); Johnson v. Acad. Mortg. Corp., No. 2:12-CV-276 TS, 2012 WL 5416200, at *2 (D. Utah Nov. 2, 2012); Guidry v. Chenega Integrated Sys., L.L.C., No. CIV-07-378-D, 2009 WL 312069, at *5 (W.D. Okla. Feb. 6, 2009).

14

proposed notice and reminders implies that recipients of the notice have a right to join this collective, and no such right has been established. Thus, plaintiff must delete the third sentence under question and answer one, which largely repeats the sentence preceding it, that states: "You have legal rights and options that you may exercise in this case." Dkt. # 22-1, at 2. Similarly, plaintiff must revise the reminder notices so that they refer to the notice as a notice of collective action, rather than a notice of right to join lawsuit. Dkt. # 22-3, at 1; Dkt. # 22-4, at 1.

2. Judicial authorization of the notice

Defendant additionally argues that the statement—"[a] federal court authorized this notice"—and any other similar language may give the appearance of judicial endorsement of the collective action. Dkt. # 33, at 19. The Court agrees that, "[i]n exercising the discretionary authority to oversee the notice-giving process, . . . [the Court] must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 174 (1989). While the proposed notice repeats on several occasions that the Court authorized the notice, the proposed notice also states: "The Court has not decided whether Defendant or the Named Plaintiff is correct. By authorizing this notice, the Court is not suggesting that the Named Plaintiff will win or lose the case." Dkt. # 22-1, at 2. Further, in this order and opinion, the Court has directed the parties to include similar language in their statement of the case. Thus, the Court finds that the proposed notice's statements that the Court authorized the notice are not misleading. See, e.g., Robertson v. REP Processing, LLC, No. 19-CV-02910-PAB-NYW, 2021 WL 4255027, *6 (authorizing a proposed notice that included the statement: "THIS IS A COURT AUTHORIZED NOTICE").

15

3. Proposed methods of transmitting notice

Finally, defendant argues that the proposed methods of transmitting the notice, other than by mail, are excessive and unnecessary, and, thus, the Court should not order defendant to provide the requested email addresses and telephone numbers of dancers. Dkt. # 33, at 19-20. Courts in this circuit have recognized that the use of multiple methods of communication is effective and increasingly routine in FLSA jurisprudence, and "[s]ingle reminder notices . . . are typically permitted . . . ." Calvillo, 267 F. Supp. 3d at 1315 ("Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved."); Heitzman, 2022 WL 5241927, at *8 (approving plaintiff's request for a reminder notice because courts typically allow them and "defendant offer[ed] no specific reason why they should not be [allowed] in this case"). By allowing the use of multiple methods of electronic communication and the sending of a reminder notice, courts ensure that putative members are aware of the pending suit. See Bagoue v. Developmental Pathways, Inc., No. 16-CV-01804-PAB-NRN, 2019 WL 1358842, at *4 (D. Colo. Mar. 25, 2019) ("The Court finds, as it has in previous cases, that sending notice by all three methods is likely to 'increase the probability of apprising collective action members of their rights'") (quoting Lindsay v. Cutters Wireline Serv., Inc., No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *3 (D. Colo. Aug. 27, 2018)); Landry v. Swire Oilfield Servs., L.L.C., 252 F. Supp. 3d 1079, 1130 (D.N.M. 2017) ("Those courts that allow a reminder emphasize that it serves the FLSA's broad remedial purpose by ensuring that 'as many potential plaintiffs as possible are informed of the collective action and their right to opt-in.'") (quoting Chhab v. Darden Rests., Inc., No. 11 Civ. 8345(NRB), 2013 WL 5308004, at *15

16

(S.D.N.Y. Sept. 20, 2013)).  Therefore, defendant's argument that distributing notice through email and text risks distortion and improper forwarding of the notice by recipients is unpersuasive.  Dkt. # 33, at 19.  The Court finds that plaintiff's revised notice may be sent via United States mail, email, and text message, and that a reminder notice sent via postcard, email, and text provides the opportunity for as many putative plaintiffs as possible to be made aware of this pending action.[14]

Defendant objected to the scope of plaintiff's request for contact information because defendant asserted that electronic notice distribution was unnecessary and excessive.  Because the Court authorizes email and text notice distribution, the Court orders defendant to produce the names, last known home addresses, phone numbers, and personal and work email addresses of potential opt-in plaintiffs in an electronically manipulable format within 10 days of the Court entering this order and opinion.

### 4. Additional amendments ordered by the Court

The Court finds that additional amendments to the notice are necessary to ensure that the notice is fair, accurate, and informative.  District courts have discretion to authorize the form of notice sent to potential collective members and the "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Hoffman-La Roche Inc., 493 U.S. at 170-71.  "By monitoring preparation and distribution of the

---

[14]    Plaintiff states that a reminder notice will be sent to those "who have not responded to the [n]otice." Dkt. # 22, at 4. The Court approves plaintiff's proposed reminder on the condition that she does not send a reminder to individuals who have affirmatively expressed that they do not wish to join the collective.  See Sanders v. Glendale Rest. Concepts, LP, No. 19-CV-01850-NYW, 2019 WL 6799459, *5 (D. Colo. Dec. 13, 2019) (explaining that a plaintiff should send reminder notices only to potential opt-in plaintiffs who have not affirmatively declined to join the collective).

notice, a court can ensure that it is timely, accurate, and informative." Id. at 171. While the Court "should not alter plaintiff's proposed notice unless such alteration is necessary[,]" "the Court has the power and duty to ensure that the notice is fair and accurate . . . ." Prince v. Kan. City Tree Care, LLC, No. CV 19-2653-KHV, 2020 WL 3217103, at *3 (D. Kan. June 15, 2020).

### a. Case caption

The case captions on the proposed notice forms incorrectly cite the case number. Dkt. # 22-1, at 1; Dkt. # 22-2, at 1; Dkt. # 22-3, at 1; Dkt. # 22-4, at 1. Therefore, Plaintiff must amend all of the captions to reflect the correct case number, 4:24-CV-0230-CVE-CDL.

### b. References to Lady Godiva's

Throughout the proposed notice forms, plaintiff misspells defendant's name by omitting the apostrophe in "Lady Godiva's" and refers to defendant, an entity, with the pronoun "they." Dkt. # 22-1, at 1,3; Dkt. # 22-2, at 1; Dkt. # 22-3, at 1. Plaintiff must revise the proposed notice forms so that the forms spell Lady Godiva's name correctly and refer to defendant by the pronoun "it."

### c. Eligibility period

Plaintiff asks the Court to approve sending the proposed notice to all individuals who worked as dancers for defendant at any time after May 14, 2021 because this period captures every qualified worker who could potentially fall within the maximum statute of limitations and allows the Court to grant equitable tolling if the facts support it. Dkt. # 22-1, at 1. The statute of limitations for willful FLSA violations—which plaintiff alleges took place—is three years. 29 U.S.C. §§ 255, 256. While plaintiff commenced this action on May 14, 2024, the statute of limitations is not tolled as to opt-in putative collective members until they file their consent forms. In re Am. Fam. Mut. Ins. Co. v. Overtime Pay Litig., No. 06–CV–17430, 2009 WL 248677, at *4 (D. Colo. Feb. 3, 2009). In other

words, the furthest reach of the statute of limitations is individual to each plaintiff and extends three years prior to the filing of each individual plaintiff's consent. Thus, the Court finds that the proposed notice and proposed email and text notice provide an inaccurate eligibility period for recipients to join the collective. Dkt. # 22-1, at 1, 3; Dkt. # 22-3, at 1. Plaintiff must correct her references to the eligibility period to reflect the correct statute of limitations, which encompasses at most the three years prior to the issuance of the notice.

### d. The effect of opting in to the lawsuit

The proposed notice discusses the effect of joining or not joining the collective in three places, including a table on the first page, question and answer nine, and question and answer ten. Dkt. # 22-1, at 1, 3. The Court finds that scattering the information regarding the effect of a recipient opting in to the collective may confuse recipients. Thus, to avoid confusion, plaintiff should consolidate the information provided in the table and in question and answer nine and ten under a single header. See, e.g., Robertson, 2021 WL 4255027, *7 (providing an example of a court authorized notice with this information provided under a single header).

### e. Instructions as to how plaintiffs may opt-in

The proposed notice's table and question and answer 11 improperly imply that the date the recipient mails the consent form determines her eligibility to opt into the collective and fails to notify recipients that the consent form includes an agreement to be represented by Forester Haynie PLLC. Dkt. # 22-1, at 1, 3. As discussed above, an opt-in plaintiff's action does not commence for statute of limitations purposes until she files a consent to join form with the Court. See 29 U.S.C. §§ 255, 256. Additionally, opt-in plaintiffs are not required to use or contact plaintiff's counsel. Stallings, 2018 WL 1250610, at *8 (finding a plaintiff's notice "inaccurately suggest[ed] that opt-in plaintiffs

must be represented by [the plaintiff's counsel] and fail[ed] to advise potential opt-in plaintiffs that they may secure their own representation or proceed pro se"); Guthrie v. Smart Oilfield Sols., LLC, No. CIV-22-485-PRW, 2023 WL 6796204, *4 (W.D. Okla. Oct. 13, 2023) (ordering plaintiff to delete language "directing recipients to contact [p]laintiffs' counsel for more information" because the language exceeded the notice's scope and goals). The statement in the notice explaining that opt-in plaintiffs may choose their own attorney does not cure this inaccuracy. Dkt. # 22-1, at 4; Stallings, 2018 WL 1250610, at *8 (finding that a statement that "instead of contacting the above counsel, you may also contact counsel of your choice . . ." would only serve to confuse recipients of the notice because the notice later stated "your attorneys will be" plaintiff's counsel). Therefore, plaintiff must delete the statement, "If you wish to be included, you must complete the Consent to Join form at the end of this Notice[,]" from the table because the consent to join form includes an agreement for plaintiff's counsel to represent the opt-in plaintiff and an opt-in plaintiff is not required to be represented by plaintiff's counsel. Dkt. # 22-1, at 1 (emphasis in the original). Additionally, plaintiff must revise question and answer 11 to state:

> A Consent to Join form is enclosed within this notice. Because the right to claim unpaid wages expires after three years for willful FLSA violations, your eligibility to join this collective will depend on the date you or your attorney files your consent form with the Court. Therefore, if you choose to join this lawsuit, it is extremely important that you read, sign, and promptly mail this form to Forester Haynie PLLC at 400 North Saint Paul Street, Suite 700, Dallas, TX 75201[15] or contact another attorney of your choosing. **If you complete and submit the enclosed Consent Form, you are consenting to join the collective and to Forester Haynie PLLC representing you in this matter.**

---

[15]    Plaintiff's counsel has filed pleadings using both the Dallas and Little Rock offices of the firm. Dkt. # 22-1, at 4 (providing a Dallas, Texas address); Dkt. # 35 (providing a Little Rock, Arkansas address). The notice should reflect the office selected for receipt of the consent to join forms.

> All Consent to Join forms must be returned by [90 days from mailing]. If Forester Haynie PLLC receives your signed consent form after [90 days from mailing], you may be prohibited from participating in this case.

This revised language will ensure that the notice accurately portrays the statute of limitations and recipients' ability to choose their own representation.

### f. Opt-in plaintiff representation

The proposed notice also inaccurately states under question and answer twelve that opt-in plaintiffs will be represented by plaintiff's counsel if they choose to join the lawsuit and states under question and answer 15 that: "If you have any questions or require additional information, please contact any of the following individuals who are counsel to the Plaintiffs in this lawsuit . . . ." Dkt. # 22-1, at 3-4; Stallings, 2018 WL 1250610, at *8. To correct these statements, Plaintiff should consolidate question and answer 12 and 13 to state:

> If you chose to opt into the lawsuit, you may elect to proceed: (1) with Named Plaintiff's counsel, Forester Haynie PLLC, by timely returning a signed Consent to Join form to the firm; (2) with your own counsel, or (3) pro se. Regardless of your representation in this matter, you must file, either on your own or through counsel, your consent to join this lawsuit with the Court in order to join the collective action.

Plaintiff should also revise question and answer 15 to state: If you have any questions or require additional information, you may contact Named Plaintiff's counsel. Further, plaintiff must add the phrase—if you chose Named Plaintiff's counsel to represent you—to follow the phrase in question and answer nine stating that "the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and court costs . . . ." Dkt. # 22-1, at 3. Plaintiff may not include any statements attempting to dissuade recipients from hiring their own lawyers or advising recipients as to whether they should hire their own lawyers. Id. at 4.

### g. Request to keep address current

The proposed notice states: "To assist the Court and the parties in maintaining accurate lists of opt-in plaintiffs, you are requested to provide notice of any changes in your address to the attorneys listed." Dkt. # 22-1, at 4. As explained above, the notice cannot include instructions requiring the recipients to contact plaintiff's counsel. Guthrie, 2023 WL 6796204, *4. Further, the Court does not require such information. Thus, plaintiff must remove question and answer 16.

### h. Contacting the Court Clerk

The proposed notice states: "**PLEASE DO NOT CONTACT THE COURT CLERK REGARDING THIS MATTER**[.]" Dkt. # 22-1, at 4 (emphasis in the original). However, recipients of the notice may wish to contact the Court Clerk for information on the case. Further, opt-in plaintiffs may seek to proceed pro se and, thus, will need to contact the Court Clerk's office. Plaintiff must revise this statement as follows: **PLEASE DO NOT CONTACT THE COURT REGARDING THIS MATTER.**

### i. Electronic consent forms

Finally, plaintiff requests that the Court approve the use of electronic consent forms. Dkt. # 23, at 13. Plaintiff states that her "proposed email and text[] message . . . simply directs the recipient to the attached court-approved [n]otice and [c]onsent forms and provides a link to an online signature service,[] where the recipient can review and execute the [c]onsent [f]orm electronically." Id. Yet, plaintiff's proposed email and text message do not include the described link, and the notice of collective action does not explain to recipients that they may fill out an electronic consent form. Rather, the notice of collective action instructs recipients that:

> If you choose to join this lawsuit, it is extremely important that you read, sign and promptly return the Consent to Join form. . . . If you return the signed Consent to Join form by mail, the signed Consent to Join must be postmarked by [90 days from mailing]. **If your signed Consent to Join form is not returned or postmarked by [90 days from mailing], you may be prohibited from participating in this case.**

Dkt. # 22-1, at 3. Because the notice forms do not mention the use of electronic consent forms, this language implies that opt-in plaintiffs must mail the consent to join form. Thus, the notice forms must be supplemented with information describing electronic transmission of executed consent forms.[16]

## IV.

**IT IS THEREFORE ORDERED** that plaintiff's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. # 22**)** is **granted in part**—as to conditional certification, the means of distributing notice, the proposed notice schedule, the scope of the disclosure, and the use of electronic consent forms—**and denied in part**—as to the notice's form—as provided herein. The Court conditionally certifies a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act for the following collective of persons: All Dancers who worked for Defendant Bicentennial Inc. d/b/a Lady Godiva's since May 14, 2021. Defendant shall provide plaintiff with a list of putative collective members' names, last known home addresses, phone numbers, and personal and work email addresses in an electronically manipulable format **no later than February 17, 2025.**

---

[16]    The Court is not opposed to electronic consent forms and has previously approved their use. See Culver v. Saint Francis Health Sys., Inc., No. 24-CV-0078-CVE-MTS, 2024 WL 3540439, *4 (July 25, 2024).

**IT IS FURTHER ORDERED** that plaintiff's request for approval of the proposed notice is **denied**. The Court orders plaintiff and defendant to meet and confer to draft an agreed statement of the case, and plaintiff to file the new proposed notice forms, **no later than February 21, 2025**, revised in accordance with this order, to be reviewed by the Court.

**IT IS FURTHER ORDERED** that plaintiff's counsel, or someone on her behalf, shall send by United States mail, email, and text message the **revised** notice forms to the putative collective members **no later than 14 days after the later of**: defendant's disclosure of the contact information or the Court's order approving the revised notice. Eligible persons will have 90 days, from the date the notice is mailed, to opt-in by filing their consent forms. Plaintiff's counsel, or someone on her behalf, may send a reminder notice 30 days into the 90-day period to putative collective members who have not yet responded to the original notice.

**DATED** this 3rd day of February, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE